### In re PAINEWEBBER INCORPORATED LIMITED PARTNERSHIPS LITIGATION.

**Docket 96–7340.**

United States Court of Appeals, Second Circuit.

Argued May 21, 1996.

Decided Aug. 26, 1996.

**50**

Fred Taylor Isquith, Wolf Haldenstein Adler Freeman & Herz, New York City (Jody B. Amsel, of counsel; Nicholas E. Chimicles, Chimicles, Jacobson & Tikellis, Haverford, Pennsylvania, of counsel), for Movants–Appellees Plaintiff Class.

Peter L. Simmons, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Movants–Appellees PaineWebber Group, Inc., PaineWebber Incorporated, and affiliated parties.

Edward T. Joyce, Chicago, Illinois (Arthur W. Aufmann, Alexander T. Moore, of counsel; Lewis S. Sandler, Kaufman, Malchman, Kirby & Squire, New York City, of counsel; Lawrence W. Schad, Stephen B. Diamond, Andrew W. Haber, James M. DeMarco, Beeler, Schad & Diamond, Chicago, Illinois, of

counsel), for Respondents–Appellants Robert M. and Vera A. Jacobson.

Before: KEARSE, WINTER, and CALABRESI, Circuit Judges.

WINTER, Circuit Judge:

PaineWebber Group, Inc., PaineWebber Incorporated (collectively "PaineWebber") and the plaintiff class move to dismiss Robert and Vera Jacobson's appeal from Judge Stein's denial of their motion to intervene as named plaintiffs. The Jacobsons, members of a certified class, seek to intervene as named plaintiffs claiming that certain members of the class are inadequately represented. As class members, however, the Jacobsons can protect their rights through an appeal after a final judgment is entered in this litigation. Whether or not they are named plaintiffs, they may appeal from the denial of their motions to create a subclass and from the approval by the district court of a settlement over their objection that it is not fair to the proposed subclass. We hold that the district court's denial of their motion to intervene is, therefore, a nonfinal interlocutory order from which an appeal may not be taken. We grant the motion and dismiss the appeal.

We briefly describe the background of this motion. In November 1994, a series of class actions were filed against PaineWebber in the Southern District of New York, alleging that the firm had engaged in a wide-ranging scheme to defraud investors in connection with the sale of various direct investment programs [1] from 1980 through 1992. In March 1995, after the cases were consolidated, the named plaintiffs filed an amended complaint on behalf of a class of some 200,000 investors in 70 different PaineWebber limited partnerships and real estate investment trusts ("REITs"). The amended complaint alleged that PaineWebber misrepresented the risks and other aspects of the direct investment programs and sold them to clients for whom they were unsuitable investments.

---

1. Direct investment programs are vehicles by which investors pool resources to make a direct

purchase of an asset or group of assets such as real estate or aircraft.

On March 28, 1995, the Jacobsons, allegedly without knowledge of the class action pending in the Southern District, filed a class action against PaineWebber in Illinois state court. The putative class included the Jacobsons and similarly situated investors in two public limited partnerships syndicated by PaineWebber. These partnerships were the Pegasus Aircraft Income Partners, L.P. ("Pegasus I"), and the Pegasus Aircraft Income Partners, L.P.-II ("Pegasus II"). They were, and are, two of the 70 direct investment programs at issue in the action pending in the Southern District. The Jacobsons alleged that PaineWebber induced them and others in the putative class to invest in the Pegasus partnerships based on misleading sales materials. Their complaint sought relief under theories of fraud, breach of fiduciary duty, and negligent misrepresentation.

On May 30, 1995, pursuant to a stipulation by the parties in the Southern District action, Judge Haight, to whom the case was then assigned, certified a class under Rule 23(b)(3), FED. R. CIV. P., and designated a number of individuals as representatives. According to the Jacobsons, the designated representatives were investors in only 21 of the 70 limited partnerships and REITs; none of the representatives invested in Pegasus I. (It appears that some of the representatives are Pegasus II investors.) Approximately one week after the class was certified, formal notices were sent to the class members, including the Jacobsons, informing them of the pendency of the class action and of their right to opt out by July 21, 1995.

After learning of the opt-out date, the Jacobsons filed a motion in their Illinois case to compel PaineWebber to turn over whatever discovery materials had been provided to the plaintiffs in the Southern District. The Illinois court denied the motion, and the Jacobsons then moved in the Southern District for access to the discovery materials and for an extension of their opt-out deadline. In support of the motion, the Jacobsons asserted a need to know whether the designated class representatives could adequately represent the interests of the Pegasus investors and whether a subclass of investors in Pegasus I and II should be created. Judge Stein, to whom the case had been transferred, directed that the Jacobsons be given access to all discovery documents relevant to the Pegasus partnerships. He extended their deadline to opt out until 30 days after receipt of the discovery documents.

The Jacobsons did not opt out by the new deadline, October 23, 1995. On November 20, 1995, they moved to: (i) intervene as named plaintiffs in the class action pursuant to Rules 23(d)(2) and 24; (ii) create a subclass, pursuant to Rule 23(c)(4)(B) of Pegasus I and II investors; (iii) be named representatives of the Pegasus subclass; (iv) have their counsel appointed as lead counsel for the Pegasus subclass; and (v) have their counsel appointed to the class plaintiffs' Executive Committee. The Jacobsons argued that none of the previously designated class representatives had invested in Pegasus I and that class counsel and the class representatives could not adequately represent investors in Pegasus I and II because of a conflict of interest. The Jacobsons asserted that the claims of Pegasus investors were substantively different from those of the other class plaintiffs and were not subject to statute of limitations defenses confronting other plaintiffs. As a result, they argued, the class representatives would be tempted to undervalue the claims of the Pegasus investors. PaineWebber and the plaintiff class opposed the Jacobsons' motion to intervene.

The district court denied the Jacobsons' motions. It ruled that the class representatives could adequately protect the interests of Pegasus investors and that the Jacobsons were not entitled to the creation of a subclass or to intervention as of right. Specifically, Judge Stein's order stated that: (i) the sales pitch through which the Pegasus investments were marketed was not materially different from that used to sell shares in other entities; (ii) the fact that the Jacobsons' claim was not subject to the statute of limitations defense applicable to other class plaintiffs' claims did not render the class representatives inadequate to represent the Jacobsons' claim; (iii) the interests of Pegasus investors would not be compromised at trial because an expert witness had been retained by class counsel solely to explain the Pegasus losses;

and (iv) the Jacobsons retained the right to object to the size and allocation among investors of any proposed settlement pursuant to Rule 23(e). Judge Stein also denied permissive intervention pursuant to Rule 24(b). The Jacobsons thereafter appealed from the district court's denial of their motion to intervene. PaineWebber, joined by the plaintiff class, moved to dismiss.

The principal issue is whether the district court's order falls within the collateral order exception to the final judgment rule of 28 U.S.C. § 1291 recognized in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The collateral order exception applies to a "small class" of district court decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26. To qualify as an appealable collateral order under this exception, the matter appealed must: (i) conclusively determine the disputed question; (ii) resolve an important issue completely apart from the merits; and (iii) be effectively unreviewable on appeal from a final judgment. *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 375, 107 S.Ct. 1177, 1181–82, 94 L.Ed.2d 389 (1987).

The Jacobsons rely upon a number of our decisions for the proposition that denials of motions to intervene are appealable collateral orders under the *Cohen* doctrine. *See United States v. Hooker Chemicals & Plastics,* 749 F.2d 968, 973–74, 990 & n. 19 (2d Cir. 1984); *Shore v. Parklane Hosiery,* 606 F.2d 354, 355 (2d Cir.1979); *New York Pub. Interest Res. Group, Inc. v. Regents of Univ. of State of New York,* 516 F.2d 350, 351 & n. 1 (2d Cir.1975).

However, there is a crucial distinction between those cases and the present one. In cases in which we have deemed a denial of a motion to intervene to be appealable, the moving party was not a member of a certified class and thus had no standing of any kind in the litigation. In order to assert claims or defenses in the litigation, the would-be intervenor had to become a party. If the motion to intervene was denied, the would-be intervenor would have had no opportunity to assert substantive rights, except by argument in support of the motion to intervene itself. That argument might seek to demonstrate the intervenor's interest in the outcome of the litigation by relying on various claims or defenses the intervenor would make if accorded status as a party. If intervention were denied, however, any final judgment in the matter would not reflect an adjudication of such claims or defenses because the denial of intervention would have rendered any substantive motion accompanying the application to intervene moot. On appeal, the only matter to be resolved, therefore, would be the denial of the motion to intervene, although, to be sure, the asserted interests of the proposed intervenor might to one degree or another overlap with the merits of the claims or defenses it wished to assert.

In the cases relied upon by appellant, if an immediate appeal from the denial of intervention were unavailable, the litigation would proceed without the intervenor. If the litigation went to judgment, the putative intervenor could then appeal the denial. If the intervenor prevailed on appeal, the entire matter might have to be relitigated. Similarly, if the litigation settled without the intervenor's participation, the intervenor could still appeal, rendering any settlement contingent on the appeal's outcome. There are thus strong efficiency reasons in such cases to permit an immediate appeal of a denial of a motion to intervene by movants who are not members of a class.

To be sure, one may quarrel with the application of the collateral order exception to such denials of intervention, because a denial of a motion to intervene generally does not cause an irretrievable loss of rights. The putative intervenor can still appeal the denial after a final judgment is entered. The denial can be reversed, the case remanded, and the intervenor can then assert its claims. However, as noted, the denial of intervention risks great waste if reversed after final judgment, and it is not for a panel of this court to reexamine our cases. *Commodity Futures Trading Commission v. Dunn,* 58 F.3d 50,

53 (2d Cir.1995), *cert. granted*, ── U.S. ──, 116 S.Ct. 1846, 134 L.Ed.2d 947 (1996).

■ Nevertheless, we see no reason to extend the decisions in question to the circumstances before us. In this case, the putative intervenors are members of a certified class. As such, they are for some purposes parties—for example, for purposes of res judicata—unlike most would-be intervenors. It is true that class members are passive parties and do not have the responsibilities or power of named plaintiffs. However, as members of the class, the Jacobsons could, and did, move for the creation of a subclass and, we hold, can appeal the denial of that motion once a final judgment is entered. They can also appeal from the district court's approval of a settlement as unfair to the Pegasus investors if they objected to the proposed settlement at the Rule 23 hearing. *See In re Agent Orange Product Liability Litigation,* 818 F.2d 145, 161–74 (2d Cir. 1987) (addressing class members' objections on appeal from a judicially approved class action settlement), *cert. denied sub nom., Pinkney v. Dow Chemical,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Parklane Hosiery,* 606 F.2d at 357 (recognizing class members' right to appeal from a final judgment). *See also* 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1802 & n.5, 6 (1986) (any class member who has objected to the dismissal or compromise has a right to appeal).

The Jacobsons have these rights as members of the certified class and may assert them without becoming named plaintiffs. If their motions to create a new subclass and to be named representatives of it were granted, however, they would have to become named plaintiffs. Their motion to intervene, therefore, was solely in aid of their motion to be designated representatives if a subclass was created. Whereas in non-class actions the denial of a motion to intervene usually renders accompanying substantive motions moot, the denial of the substantive motion in the present case—the motion to create a subclass—rendered the motion to intervene moot. An appeal from the denial of intervention as a named plaintiff is, therefore, in these circumstances functionally indistinguishable from an appeal from the denial of the motion for creation of a subclass, which is fully appealable by class members after entry of a final judgment. Because an appeal from the denial of a motion to create a subclass would clearly be interlocutory and well outside the collateral order exception, we see no reason to treat the present appeal differently.

In so holding, we do not exclude the possibility that some denials of intervention to class members may be appealable where the merits of the underlying claim may otherwise be irretrievably lost, e.g., a claim for preliminary relief. We can, however, address such issues when they arise.

Because the district court's denial of the motion to intervene falls outside the *Cohen* doctrine and is a non-appealable interlocutory order, we dismiss the appeal.