### In re NASDAQ MARKET–MAKERS ANTITRUST LITIGATION.

Nos. MDL 1023, 94 Civ. 3996 RWS.

United States District Court,
S.D. New York.

Feb. 10, 1999.

**508**

Fine, Kaplan and Black, Philadelphia, PA, by Arthur M. Kaplan, of counsel, Lovell & Stewart, New York City, by Christopher Lovell, of counsel, Meredith Cohen Greenfogel & Skirnick, New York City, by Robert A. Skirnick, of counsel, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, by Leonard B. Simon, of counsel, for plaintiffs.

Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, by R. Bruce Holcomb, of counsel, Sullivan & Cromwell, New York City, by John L. Warden, of counsel, Weil, Gotshal & Manges, New York City, by Jay N. Fastow, of counsel, for defendants.

Law Offices of Lawrence W. Schonbrun, Berkeley, CA, by Lawrence W. Schonbrun, of counsel, for John Kavanagh and Gerald Vinnard.

John Genins, Atlanta, GA, Edward M. Selfe, Birmingham, AL, class members pro se.

## OPINION

SWEET, District Judge.

Class member John Genins ("Genins") has moved pro se (1) pursuant to Federal Rules of Appellate Procedure 4(a)(5) to extend the time within which to file a notice of appeal from the opinion of this Court dated November 9, 1998 (the "Opinion"), and the judgment entered on November 13, 1998 (the "Judgment"); (2) pursuant to Federal Rule of Civil Procedure 59(e), to alter and amend the Judgment; (3) for reconsideration of the Opinion insofar as it denied Genins' motion to intervene; and (4) for an order allowing him to inspect and copy all "secret" filings by the parties.

Class members John Kavanagh ("Kavanagh") and Gerald Vinnard ("Vinnard"), and class member Edward M. Selfe ("Selfe") *pro se* have moved pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(2) to intervene for the limited purpose of preserving and protecting their right to appeal.

The class plaintiffs have moved, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, to require Genins to post a bond to secure costs, including attorneys fees, arising from Genins' proposed appeal.

For the reasons stated below, Genins' motions are denied, plaintiffs' motion is denied as moot, and the Selfe, Kavanagh and Vinnard motions are denied.

The parties, facts and prior proceedings have been set forth more fully in several prior opinions of the Court, familiarity with which is assumed. *See In re Nasdaq Market–Makers Antitrust Litigation*, 894 F.Supp. 703 (S.D.N.Y.1995); *In re NASDAQ Market–Makers Antitrust Litigation*, 164 F.R.D. 346 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation*, 1996–1 Trade Cas. (CCH) ¶ 71,407, 1996 WL 187409 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation*, 929 F.Supp. 723 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation*, 929 F.Supp. 174 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation*, 938 F.Supp.

232 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493 (S.D.N.Y.1996); *United States v. Alex. Brown & Sons,* 169 F.R.D. 532 (S.D.N.Y. 1996); *In re NASDAQ Market–Makers Antitrust Litigation,* 172 F.R.D. 119 (S.D.N.Y. 1997); *In re Nasdaq Market–Makers Antitrust Litigation,* 176 F.R.D. 99 (S.D.N.Y. 1997); *United States v. Alex. Brown & Sons,* 963 F.Supp. 235 (S.D.N.Y.1997); *In re Nasdaq Market–Makers Antitrust Litigation,* 176 F.R.D. 99 (S.D.N.Y.1997); *In re NASDAQ Market–Makers Antitrust Litigation,* 1997–2 Trade Cas. (CCH) ¶ 72,028, 1997 WL 805062 (S.D.N.Y.1997); *In re Nasdaq Market–Makers Antitrust Litigation,* 1998 WL 782020 (S.D.N.Y. November 9, 1998). Those facts and prior proceedings relevant to the instant opinion are set the below.

### The Parties

Plaintiffs are representatives of a class of over 1.0 million individual and institutional investors who purchased or sold shares of class securities on the National Association of Securities Dealers Automated Quotation ("NASDAQ") Exchange from one or more defendants or their commonly owned affiliates during the period of May 1, 1989 to May 24, 1994.

The thirty-seven defendants (the "Defendants") in this action are all market-makers on the NASDAQ Exchange, a computerized securities quotations system operated by the National Association of Securities Dealers ("NASD").

### Prior Proceedings

On October 14, 1997, December 31, 1997, and March 30, 1998, the Court preliminarily approved the proposed settlement between the plaintiffs and various defendants. Following preliminary approval, and pursuant to orders entered on February 4, 1998 and March 30, 1998, a Notice of Pendency of Class Action and of Proposed Settlements approved by the Court was mailed to more than a million class members. Pursuant to those same orders, a summary notice was published in the *Wall Street Journal,* the *New York Times, USA Today,* as well as 35 local newspapers, and in periodicals such as *Barron's, Business Week, Forbes, Fortune,* and *Worth,* as well as on an Internet website and online investor services. Class members were advised of the existence and terms of the proposed settlement and fee application and apprised of their right to opt-out or object to settlement approval, and/or fees and expenses, by filing and serving written objection by July 14, 1998.[1]

On September 8, 1998, Genins moved to intervene and become an additional class representative.

A hearing was held on September 9, 1998. Objectors were heard with respect to the fee application. No objections were made with respect to the amount of the proposed settlement.

By Opinion dated November 9, 1998, this Court approved the proposed settlement and awarded attorney's fees to Plaintiffs' Class Counsel of 14.0 percent of the common fund plus full reimbursement of expenses. Genins' motion to intervene as a class representative was denied. Final judgment was entered on November 13, 1998.

On November 23, 1998, Selfe filed his motion to intervene solely to perfect his right to appeal from the Judgment with respect to the award of attorney's fees. Kavanagh and Vinnard also filed a motion to intervene on November 23, 1998.

On November 30, 1998, Genins filed his motion to alter and amend the Judgment. On December 8, 1998, Genins filed his motions to extend time to file a Notice of Appeal, for reconsideration, and his request for an order allowing him to inspect and copy all "secret" filings by the parties. He also served a "Protective Notice of Appeal." On December 8, 1998, Kavanagh and Vinnard filed a Notice of Appeal.

On December 31, 1998, plaintiffs filed their motion, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, to require Genins to post a bond to secure costs, including attorneys' fees, arising from Genins' proposed appeal. Opposition and reply papers on the motions were received through January 5, 1999. Oral argument was heard on

---

**1.** Time to opt-out was later enlarged until September 29, 1998.

January 20, 1999,[2] at which time all the pending motions were deemed fully submitted.

## Discussion

### I. *Genins' Motions are Denied*

#### A. *The Motion for Reconsideration*

Genins does not specify whether he brings his motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) or Local Rule 6.3. Regardless, the standards governing Rule 59(e) and Local Rule 6.3 are the same. *See Candelaria v. Coughlin,* 155 F.R.D. 486, 490 (S.D.N.Y.1994); *Morser v. A.T. & T. Information Systems,* 715 F.Supp. 516, 517 (S.D.N.Y.1989).

Local Rule 6.3 provides in pertinent part: "There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Thus, to be entitled to reargument, plaintiffs must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker,* 791 F.Supp. 1002, 1008 (S.D.N.Y. 1992); *Novak v. National Broadcasting Co.,* 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm Inc. v. American Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y. 1985).

Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 6.3 motion, the court must not allow a party use the motion to reargue as a substitute for appealing from a final judgment. *See Morser,* 715 F.Supp. at 517; *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986). Therefore, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* No. 86 Civ. 6447, 1989 WL 162315, at * 3 (S.D.N.Y. 1989). The decision to grant or deny a motion for reargument is within the sound discretion of the district court. *See Schaffer v. Soros,* No. 92 Civ. 1233, 1994 WL 592891 (S.D.N.Y. Oct. 31, 1994).

Genins asks that this Court "allow his intervention to become a party herein." This matter was raised and briefed on the preceding motion and was addressed and resolved in the Opinion. *See In re Nasdaq,* 1998 WL 782020 at *23–26. The Court found that Genins did not satisfy the requirements of Federal Rule of Civil Procedure 24. Specifically, the Court found that Genins' application was untimely, and that "[e]ven if there were, sufficient common questions, Genins' claims are at odds with the Class, because his desire to litigate and recover on unrelated claims herein would potentially dilute other Class members' recoveries, ignite controversy about the merits and value of his claims, and delay disbursement of the settlement proceeds." *Id.* at *26.

Genins fails to demonstrate that the Court overlooked any controlling decisions or factual matters that were put before it on the underlying motion. Indeed, Genins does not offer any support for his motion. Thus, Genins' motion for reconsideration is denied.

#### B. *The Motion to Extend the Time Within Which to File a Notice of Appeal*

Rule 4(a)(1), Fed.R.App.P., requires that a notice of appeal shall be filed with the clerk of the district court within thirty days after the date of entry of the judgment or order appealed from. The November 9 opinion and order of this court was entered on the docket by the clerk on November 13, 1998, making the notice of appeal due on December 13, 1998.

The same rules, however, provide that the district court may extend the time for filing a notice of appeal "upon motion filed not later than 30 days after the expiration of the time

---

2. Oral argument was limited to the issue of the bond. Genins did not appear.

prescribed" by Rule 4(a), "upon a showing of excusable neglect or good cause." Rule 4(a)(5), Fed.R.App.P., cited in Rule 77(d), Fed.R.Civ.P. Genins' motion was filed with the Court on December 8, 1998, and thus satisfies the temporal requirement of Rule 4(a)(5). However, Genins has failed to make any showing of excusable neglect or good cause. In support of his motion, Genins states only that "[s]ince November 26, 1998 I have been impaired due to the mental trauma ancillary to my then learning of my Father's intention to depart this Lifetime and his having done so in the interim." Genins maintains that as a consequence of his father's passing, he has been "unable to concentrate" on the Opinion and Judgment. (Genins' Motion of December 8, 1998 at 2). While the Court is sympathetic to the loss of a parent, it appears that Genins has been able to concentrate sufficiently to file four motions since November 30, 1998. Moreover, Genins' alleged need for additional time is belied by the fact that he filed his 4(a)(5) motion on the same day as he served a "Protective Notice of Appeal." Accordingly, his motion for additional time is denied.

Given the denial of Genins' 4(a)(5) motion, and his failure to file a Notice of Appeal in accordance with Rule 4(a)(1) of the Federal Rules of Appellate Procedure, plaintiffs' motion to require Genins to post a bond is denied as moot.

### C. *The Rule 59(e) Motion to Alter and Amend the Judgment*

■ Genins is a non-party in this action. *See Donson Stores, Inc. v.. American Bakeries Co.*, 58 F.R.D. 485, 488–89 (S.D.N.Y.1973) ("Nothing in Rule 23 suggests that class members are deemed 'parties.' On the contrary, Rule 23(d)(2) specifically provides that the court may notify class members that they have the option of appearing in the case through their own counsel and the additional option of intervening, presenting claims or defenses, or otherwise formally entering the action"). Therefore, Genins, having been denied intervention, has no standing to bring a Rule 59(e) motion. *See* Fed.R.Civ.P. 59 (allowing any *party* to file a motion in the

district court to alter and amend a judgment entered in a civil action) (emphasis added); *Cf., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994) ("Within 10 days after entry of a judgment, a party may move under Rule 59(e) to alter or amend a judgment."); *Fisher v. Klein,* 873 F.2d 626, 627 (2d Cir.1989) ("Rule 59(e) allows any party to file a motion in the district court to alter or amend a judgment entered in a civil action.").

■ Moreover, Genins has not advanced any reason why the Opinion and Judgment should be disturbed. The Court has considered all of Genins' objections and deemed them untimely and/or without merit. *See In re Nasdaq,* 1998 WL 782020 at *13, 23. Genins' only new argument is that the "proposed Judgment faxed to me by Mr. Kaplan before September 9 did not contain the names of the class members, as apparently required by Fed.R.Civ.P. 23." In fact, Rule 23(c)(3) does not require a list of every single class member. Rule 23(c)(3) provides in relevant part:

> The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those ... whom the court finds to be members of the class.

The final judgment, in the present case, does "specify or describe" the persons included in the class.

### D. *Other Motions*

■ Genins requests "an immediate Court Order allowing [his] inspection and copying of all secret filings by the parties; *e.g.,* Exhibit C to the agreed settlement's Proposed Judgment...." Given that Genins is not a party to this action, *see Donson Stores,* 58 F.R.D. at 488–89, he does not have standing to seek access to documents filed under seal [3] in this action.

Moreover, Genins provides no reason why he should be allowed to inspect any document filed under seal in this case. The only document to which he refers specifically is

---

**3.** Presumably, this is to what Genins refers as     "secret" filings.

Exhibit C to the Settlement Agreement, which states the payments that each of the Defendants was obligated to pay. The total amount of the payments to be made under the Settlement Agreement was publicly announced in filings made in December, 1997, and is available to Genins. The adequacy of the settlement does not depend upon the allocation of that amount among the Defendants. *See e.g., In re Warner Communications Sec. Litig.,* 798 F.2d 35, 37 (2d Cir. 1986).

## II. *The Motions to Intervene By Selfe and Kavanagh and Vinnard Are Denied*

Selfe and Kavanagh and Vinnard seek to intervene "for the purpose of preserving and protecting their right to appeal the approval of a settlement or attorney's fees to which they have objected." (Kavanagh and Vinnard Brief at 1). As a threshold inquiry, the putative intervenors seek a determination as to whether or not intervention for the purpose of appeal in a class action is required in this Circuit. The Courts of Appeals of several circuits have taken various approaches to this issue. *Compare, Guthrie v. Evans,* 815 F.2d 626 (11th Cir.1987) (formal intervention is a prerequisite to an unnamed class member's standing to appeal, at least in the absence of any violations of the Rule 23 procedures intended to protect the rights of those unnamed class members); *Shults v. Champion Intern. Corp.,* 35 F.3d 1056 (6th Cir.1994) (unnamed class members lacked standing to appeal a settlement order when they did not intervene or seek to intervene); *In re Brand Name Prescription Drugs Antitrust Litigation,* 115 F.3d 456 (7th Cir.1997); *Gottlieb v. Wiles,* 11 F.3d 1004 (10th Cir.1993); *Croyden Assoc. v. Alleco, Inc.,* 969 F.2d 675 (8th Cir. 1992); *Walker v. City of Mesquite,* 858 F.2d 1071 (5th Cir.1988), *with Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304 (3rd Cir.1993) (shareholders who failed to intervene in derivative suit, but did object to settlement in district court, had standing to appeal); *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173 (9th Cir. 1977) (unnamed class members had legal rights affected by the settlement and had standing to sue); *In re Cement Antitrust Litig.,* 688 F.2d 1297, 1309 (9th Cir.1982) (Rule 23 allows class member to appeal from order approving settlement to which members object).

■ The Second Circuit has found that unnamed class members have standing to appeal from the district court's approval of a settlement if they objected to the proposed settlement at the Rule 23 hearing. *See In re Painewebber,* 94 F.3d 49 (2d Cir.1996); *In re Agent Orange Product Liability Litigation,* 818 F.2d 145, 161–74 (2d Cir.1987) (addressing class members' objections on appeal from a judicially approved class action settlement); *Shore v. Parklane Hosiery,* 606 F.2d 354, 357 (recognizing class member's right to appeal from a final judgment); 7B Charles Alan Wright, Arthur B. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1802 & n. 5, 6 (1986) (any class member who has objected to the dismissal or compromise has a right to appeal). Selfe, Kavanagh and Vinnard all objected to the proposed settlement and/or fee application at the hearing held on September 9, 1998. Accordingly, while they fail to meet the requirements of Rule 24, formal intervention is not required, and under the Second Circuit authority cited above, Selfe, Kavanagh and Vinnard have standing to appeal in this action.

### A. *Legal Standards for Intervention*

Rule 24(a) of the Federal Rules of Civil Procedure, provides for intervention as of right in the following circumstances:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relative to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2); *see also United States v. Pitney Bowes, Inc.,* 25 F.3d at 70; *Washington Elec. Coop. Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 96 (2d Cir.1990).

In this Circuit intervention as of right is permitted only if an applicant has fulfilled all of the following requirements: (1) filed a timely application; (2) shown an interest in the action; (3) demonstrated that such an interest would be impaired by the disposition of the action; (4) shown that the interest is not adequately protected by existing parties to the action. *See New York News, Inc. v. Kheel,* 972 F.2d 482, 485 (2d Cir.1992) (denying intervention as of right because applicant failed to show a "protectable" interest in the action). Failure to satisfy any one of these elements constitutes sufficient grounds to deny an intervention application. *United States v. New York,* 820 F.2d 554, 556 (2d Cir.1987);[4] *accord, In re Nasdaq,* 1998 WL 782020 at *24.

## B. The Motions of Selfe, Kavanagh and Vinnard are Untimely

The timing of applications to intervene is of special interests to the courts. The Second Circuit disfavors post-judgment intervention "because it fosters delay and prejudice to existing parties." *Farmland Dairies v. Com'r of N.Y. Dep't of Agr.,* 847 F.2d 1038, 1044 (2d Cir.1988). The Court of Appeals has further held that the "determination of timeliness of an application to intervene is committed to the sound discretion of the trial court, and we therefore review only as to abuse of that discretion." *Id.* (citing *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973)).

The factors which a district court should take into consideration when evaluating the timeliness of a motion to intervene are:

(1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's

delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness.

*Farmland Dairies,* 847 F.2d at 1044.

### 1. Length of Time

Selfe and Kavanagh and Vinnard rely on *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) and *Alaska v. Suburban Propane Gas Corp.,* 123 F.3d 1317 (9th Cir.1997), for the proposition that a post-judgment motion to intervene is timely if the putative intervenor acted promptly after the entry of final judgment. Neither of these cases, however, is applicable here. In both *McDonald* and *Suburban Propane,* the orders which the unnamed class members sought to appeal were denials of class certification motions. Significantly, the intervenors in those cases only became aware that the named class members would not appeal after final judgment was entered:

The critical fact here is that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation. In short, as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests.

*McDonald,* 432 U.S. at 394, 97 S.Ct. 2464. In *McDonald* and *Suburban Propane,* the motions to intervene were filed days after the intervenors realized that their position might diverge from the class representatives. By contrast, both Selfe and Kavanagh and Vinnard waited months after learning of the

---

4. Both the Selfe motion and the Kavanagh and Vinnard motion seek intervention pursuant to Fed.R.Civ.P. 24(a)(2). The latter motion, but not the Selfe motion, also seeks intervention under Rule 24(b)(2). The standards under the two subsections are similar: delay and prejudice to the original parties must be considered as part of a timeliness analysis under case law interpreting Rule 24(a), and is explicitly included in the language of Rule 24(b). *See United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 73–74 (2d Cir.1994)

(affirming denial of motions to intervene under both Rule 24(a) and 24(b); applying similar analysis to both motions).

Rule 24(b)(2) merely permits "permissive" intervention in the "discretion" of the Court. Indeed, Rule 24(b)(2) expressly directs that, "In exercising its discretion, the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

proposed settlements and fee petition to file their motions to intervene.

The Second Circuit consistently has affirmed district court decisions denying motions to intervene as untimely, where the would-be intervenors failed to act promptly on developments which they perceived to be adverse to their interests. *See, e.g., Catanzano v. Wing,* 103 F.3d 223, 233 (2d Cir.1996) (affirming denial of motion to intervene as untimely); *New Spectrum Realty Servs., Inc. v. Nature Co.,* 42 F.3d 773, 777 (2d Cir.1994) (motion for intervention after close of evidence would be denied as untimely where movant had ample notice of suit); and *United States v. New York,* 820 F.2d 554, 557 (2d Cir.1987) (affirming denial of motion to intervene as untimely).

In *Farmland Dairies,* various New Jersey milk dealers sued a regulatory arm of the State of New York. The parties reached a settlement that allowed the dealers to sell milk in the New York City area, and various New York milk dealers moved to intervene for the purpose of appeal.

The district court denied the New York dealers' motion on the grounds that it was untimely, and the Second Circuit affirmed. Applying the factors listed above, the Second Circuit found that the would-be intervenors knew of the litigation potentially affecting their interests long before they filed their motion for intervention. 847 F.2d at 1044.

Here, Selfe filed objections to the proposed fees on June 18, 1998, and Kavanagh and Vinnard filed objections to the proposed settlements and to the proposed fees on July 13, 1998. Furthermore, Selfe and Kavanagh and Vinnard were on notice by August 14, 1998 (if not before) that none of the plaintiffs or class representatives objected to the proposed settlements or fees. In fact, Plaintiffs' Response To The Objections To The Proposed Settlements, Class Notice, or Counsel Fees ("Plaintiffs' Response to Objections") at page one explicitly states that "none of the objectors are class representatives, or plaintiffs." [5]

Selfe and Kavanagh and Vinnard were aware that their interests might diverge from those of the existing class representatives well before they filed their motions to intervene. In *United States v. Yonkers Bd. of Educ.,* 801 F.2d 593, 596 (2d Cir.1986), the Court held that a motion to intervene to challenge an order was tardy after a three month delay.[6] The Court of Appeals included in its timeliness calculus the three month period prior to the entry of the order, on the theory that the applicants were on notice that their rights could be affected by the order which the district court might issue. 801 F.2d at 596–97. In the instant case, Selfe, Kavanagh and Vinnard were on notice by August 14, 1998, that their interests might be compromised, and should have moved to intervene before the September 9, 1998 hearing.[7] Instead, Selfe, Kavanagh and Vinnard waited until November 23, 1998. Thus, their motions are tardy. *See New Spectrum Realty,* 42 F.3d at 777 (would-be intervenor had ample notice that parties' interests might diverge from his own; affirming denial of motion to intervene as untimely).

### 2. *Prejudice to Existing Parties*

The Second Circuit has noted on several occasions that "jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit." *United States v. Pitney Bowes, Inc.,* 25 F.3d at 72 (government and settling defendants negotiated consent decree; affirming denial of intervention motion for lack of timeliness); *New York News, Inc. v. Kheel,* 972 F.2d at 487 (allowing intervention would upset settlement in case arising out of bitter labor dispute and would result in substantial prejudice to settling par-

---

**5.** Plaintiffs' Response to Objections was served on Mr. Kavanagh and Vinnard and Selfe on August 14, 1998.

**6.** In *Yonkers Bd. of Educ.,* the Applicants moved to intervene twelve days after the order was entered.

**7.** Contrary, to plaintiffs' assertions, it is not the law of the case that the July 14, 1998 deadline for filing objections is also the deadline for motions to intervene. While the Court found that Genins' motion was filed "almost two months after the July 14, 1998 deadline for objecting," *In re Nasdaq,* 1998 WL 782020 at *25, this deadline is not dispositive of timeliness, but rather one indication thereof.

ties); *Farmland Dairies,* 847 F.2d at 1044 (parties' interest in "avoiding continuing litigation" and realizing fruits of settlement sufficient to show prejudice by motion for intervention). *See also Presidential Life,* 946 F.Supp. at 277 (denying motion; intervention would prejudice settling parties by exposing them to litigation risks and would delay distribution and increase costs for plaintiffs).

The present action involves dozens of class representatives, more than a million individual and institutional class members, and thirty-seven defendants. The settlements took four years to achieve, more than a year to negotiate, and consumed untold hours of the lawyers, the parties, and this Court. Given the number of class members affected, the considerable time and effort devoted to achieving the $1.027 billion settlements, and the massive litigation risks faced by both sides, *see In re Nasdaq,* 1998 WL 782020 at *1–10, intervention at this stage would cause great prejudice to the existing parties.

### 3. *Prejudice to the Applicants*

In support of their motion to intervene, Kavanagh and Vinnard assert that "[t]he fairness of the class action procedure depends upon the ability of unnamed class members to have settlements and attorneys' fee awards reviewed at the appellate level." (Kavanagh and Vinnard Brief at 5). Of course, appellate review of settlement and/or fee awards is critically important. However, as discussed above, given that Selfe and Kavanagh and Vinnard have objected to the proposed settlement and/or fee application at the hearing held on September 9, 1998, they have standing to file an appeal in this action.[8] Formal intervention is not required to appeal in a class action. Kavanagh, Vinnard and Selfe therefore will suffer no prejudice as a result of the denial of their motions.

Accordingly, Kavanagh and Vinnard and Selfe's motions to intervene are denied.

### *Conclusion*

For the reasons stated above, Genins' motions are denied, Plaintiffs' motion to require Genins to post a bond is denied as moot, and

Selfe and Kavanagh and Vinnard's motions are denied.

It is so ordered.

---

8. This assumes, of course, that Kavanagh and Vinnard and Selfe have satisfied the require-

ments of Federal Rule of Appellate Procedure 4(a)(1).