**In re NASDAQ MARKET–MAKERS ANTITRUST LITIGATION.**

**Nos. M.D.L. No 1023, 94 Civ. 3996(RWS).**

United States District Court, S.D. New York.

May 24, 1999.

Fine Kaplan and Black, Philadelphia, PA, by Arthur M. Kaplan, Lovell & Stewart, New York City, by Christopher Lovell, Meredith Cohen Greenfogel & Skirnick, New York City, by Robert A. Skirnick, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, by Leonard B. Simon, of counsel, for plaintiffs.

John Genins, Atlanta, GA, for Class Member, pro se.

## OPINION

SWEET, Senior District Judge.

Class plaintiffs have moved (1) pursuant to Rule 7 of the Federal Rules of Appellate Procedure, to require class member John Genins ("Genins") to post a bond to secure costs, including attorneys fees, arising from Genins' proposed appeal, and (2) for sanctions against Genins pursuant to Fed.R.Civ.P 11 and 28 U.S.C. § 1927. For the reasons set forth below, plaintiffs' motions are granted.

The parties, facts and prior proceedings have been set forth more fully in several prior opinions of the Court, familiarity with which is assumed. *See In re Nasdaq Market–Makers Antitrust Litigation,* 894 F.Supp. 703 (S.D.N.Y.1995); *In re NASDAQ Market–Makers Antitrust Litigation,* 164 F.R.D. 346 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation,* 1996–1 Trade Cas. (CCH) ¶ 71,407 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation,* 929 F.Supp. 723 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation,* 929 F.Supp. 174 (S.D.N.Y.1996); *In re NASDAQ Market Makers Antitrust Litigation,* 938 F.Supp. 232 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493 (S.D.N.Y.1996); *United States v. Alex. Brown & Sons,* 169 F.R.D. 532 (S.D.N.Y.1996); *In re NASDAQ Market–Makers Antitrust Litigation,* 172 F.R.D. 119 (S.D.N.Y.1997); *In re Nasdaq Market–Makers Antitrust Litigation,* 176 F.R.D. 99 (S.D.N.Y.1997); *United States v. Alex. Brown & Sons,* 963 F.Supp. 235 (S.D.N.Y.1997); *In re Nasdaq Market–Makers Antitrust Litigation,* 176 F.R.D. 99 (S.D.N.Y.1997); *In re Nasdaq Market–Makers Antitrust Litigation,* 1997–2 Trade Cas. (CCH) ¶ 72,028 (S.D.N.Y.1997); *In re Nasdaq Market–Makers Antitrust Litigation,* 187 F.R.D. 465 (S.D.N.Y. 1998); *In re Nasdaq Market–Makers Antitrust Litigation,* 184 F.R.D. 506 (S.D.N.Y.1999). Those facts and prior proceedings relevant to the instant opinion are set forth below.

### The Parties

Plaintiffs are a representatives of class of over 1.0 million individual and institutional investors who purchased or sold shares of class securities on the National Association of Securities Dealers Automated Quotation ("NASDAQ") Exchange from one or more defendants or their commonly owned affiliates during the period of May 1, 1989 to May 24, 1994.

The 37 defendants (the "Defendants") in this action are all market-makers on the NASDAQ Exchange, a computerized securities quotations system operated by the National Association of Securities Dealers ("NASD").

### Prior Proceedings

On October 14, 1997, December 31, 1997, and March 30, 1998, the Court preliminarily approved the proposed settlement between the plaintiffs and various defendants. Following preliminary approval, and pursuant to orders entered on February 4, 1998 and March 30, 1998, a Notice of Pendency of

Class Action and of Proposed Settlements approved by the Court was mailed to more than a million class members. Pursuant to those same orders, a summary Notice was published in the *Wall Street Journal,* the *New York Times, USA Today,* as well as 35 local newspapers, and in periodicals such as *Barron's, Business Week, Forbes, Fortune,* and *Worth,* as well as on an Internet website and online investor services. Class members were advised of the existence and terms of the proposed settlement and fee application and apprised of their right to opt-out or object to settlement approval, and/or fees and expenses, by filing and serving written objection by July 14, 1998.[1]

On September 8, 1998, Genins moved to intervene and become an additional class representative. A hearing was held on September 9, 1998. Objectors were heard with respect to the fee application. No objections were made with respect to the amount of the proposed settlement.

By Opinion dated November 9, 1998, this Court approved the proposed settlement and awarded attorney's fees to plaintiffs' Class Counsel of 14.0 percent of the common fund plus full reimbursement of expenses. Genins' motion to intervene as a class representative was denied. Final judgment was entered on November 13, 1998.

On November 30, 1998, Genins filed his motion to alter and amend the Judgment. On December 8, 1998, Genins filed his motions to extend time to file a Notice of Appeal, for reconsideration, and his request for an order allowing him to inspect and copy all "secret" filings by the parties. He also served a "Protective Notice of Appeal."

On December 31, 1998, plaintiffs filed their motion, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, to require Genins to post a bond to secure costs, including attorney's fees, arising from Genins' proposed appeal.

By Opinion and Order dated February 10, 1999, the Court denied all of Genins' post-judgment motions and denied plaintiffs' motion to require Genins to post a bond as moot. Subsequently, Genins filed a Notice of Appeal,[2] and on March 25, 1999, plaintiffs moved to renew their motion to require Genins to post a bond. Opposition and reply papers were received through May 3, 1999, at which time the motion was deemed fully submitted.

On April 19, 1999, plaintiffs filed their motion for sanctions. Oral argument was heard on April 28, 1999, at which time the motion was deemed fully submitted.[3]

### Discussion

#### I. *Genins Will Post a Bond*

As this Court has stated, "Genins' apparent intent is to use this class action as a vehicle to litigate his unrelated 25 year-old claims." *In re Nasdaq Market–Makers Antitrust Litigation,* 187 F.R.D. at 491. In his Objections to the Proposed Settlement Agreement, Genins indicated that he intended to use this class action as a means to obtain payment for his unrelated, individual claims against Merrill Lynch, Dean Witter and/or Bear Stearns:

> Wherefore, the undersigned prays that . . . in the event that the Court does approve the settlement and enter Judgment thereon . . . and if the Judgment is affirmed allow him to intervene and litigate herein his claims against Dean Witter and Merrill Lynch. . . .

(Genins' Addendum To Objection at 5).

Plaintiffs' Co–Lead Counsel, Christopher Lovell, Esq. ("Lovell") avers that Genins told him during a phone conversation that his claim against Merrill Lynch had gone nowhere for the past 20 years and that he intended to use this litigation as a vehicle to recover on those claims. Lovell Aff. ¶ 3(a) and (d). Further Lovell avers that Genins

---

**1.** Time to opt-out was later enlarged until September 29, 1998.

**2.** As Genins' Notice of Appeal is stamped as having been filed on December 9, 1999 (approximately seven months from now), it is unclear exactly when it was filed.

**3.** Although Genins' did not appear, he did file opposition to both the motion requiring him to post a bond and the motion for sanctions.

suggested that "anyone" (including plaintiffs) could make Genins an offer to settle his personal claims. *See* Lovell Aff. ¶¶ 3(g) and 4.

Genins' repeated attempt to use this class action for his own unrelated purposes is improper, and his personal pursuits should not be permitted to delay the administration of a $1.027 billion settlement. Genins must be accountable for the damage caused by his actions. Accordingly, Genins will post a bond to include: (1) costs on appeal;[4] (2) attorney's fees on appeal; and (3) damages resulting from the delay and/or disruption of settlement administration caused by his appeal.

Rule 7 of the Federal Rules of Appellate Procedure states in pertinent part:

> Bond for Costs on Appeal in Civil Cases: The district court may require an appellant to file a bond or provide other security in such form and amount as it finds necessary to ensure payment of costs on appeal in a civil case.

Fed.R.App.P. 7.

█ An appeal bond provides a "guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal." *Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau,* 702 F.Supp. 60, 65 (S.D.N.Y.1988), *vacated on other grounds,* 924 F.2d 1237 (2d Cir.1991). The Supreme Court has defined damages for delay to include:

> (1) the depreciation of the property in market value pending the appeal; or (2) its deterioration by waste, or want of repair, or the accumulation of taxes or other burdens; or (3) the use and deterioration of the property pending the appeal, that is, the rents and profits; or (4) the nonpayment of the costs of the appeal.

*Omaha Hotel Co. v. Kountze,* 107 U.S. 378, 392, 2 S.Ct. 911, 27 L.Ed. 609 (1883). Plaintiffs submit that the increased administrative expenses resulting from the delay caused by Genins' appeal will damage the Class by directly causing "waste" to the Settlement Fund, "as the processing of claims is interrupted and restarted, with additional expenses necessarily incurred in extending the leases on office space and the leases on equipment, extending insurance and website maintenance, picking up mail and answering inquiries about the status of claims administration during its hiatus, and rehiring and retraining of the claims administration staff." (Plaintiffs' Brief at 5). Plaintiffs aver that the disruption costs resulting from even a six-month shut-down of settlement administration would total approximately $526,100.[5] Plaintiffs further submit that a conservative estimate of their costs on appeal amounts to $1,500.[6]

Plaintiffs are entitled to security for reasonable attorney's fees. " 'Costs' under Rule 7 may include the definition of 'costs' contained in the relevant substantive statute under which appeal is sought and are not limited by the enumeration of some 'costs' found in Rule 39." *Adsani v. Miller,* 139 F.3d 67 (2d Cir.1998). In the present action, the relevant substantive statute is section four of the Clayton Act, which provides for the recovery of the "cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15.

In *Adsani v. Miller,* the Second Circuit held in deciding whether to secure attorney's fees, it is appropriate to consider "the merits of the appeal itself." 139 F.3d at 79. "A district court, familiar with the contours of the case appealed, has the discretion to im-

---

4. Plaintiffs submit that given the frivolous nature of Genins' appeal, the bond should secure double costs on appeal pursuant to Rule 38 of the Federal Rules of Appellate Procedure. Rule 38 authorizes an assessment of damages and single or double costs "[i]f [the] court of appeals shall determine that [the] appeal is frivolous." Fed. R.App.P. 38. However, "it is for the court of appeals and not the district court to decide whether Rule 38 costs and damages should be allowed in any given case." *In re American President Lines, Inc.,* 779 F.2d 714, 717 (D.C.Cir. 1985).

5. $54,350 per month times six months, plus $200,000 for the restart process. Plaintiffs submit that six months is an "extremely conservative estimate" of the period by which the settlement administration will be delayed by Genins' appeal.

6. Plaintiffs' costs include printing their brief in opposition to the appeal. Given that the service list for plaintiffs' counsel and defendants' counsel includes more than one hundred law firms, printing costs could easily amount to $1,500.

pose a bond which reflects its determination of the likely outcome of the appeal." *Id.* In view of this Court's finding that Genins' case is "objectively unreasonable," Genins will be required to secure attorney's fees in the amount of $50,000. *See id.*

Accordingly, Genins will post a bond in the amount of $101,500 which includes (1) costs on appeal in the amount of $1,500; (2) attorney's fees on appeal in the amount of $50,000; and (3) damages resulting from the delay and/or disruption of settlement administration caused by his appeal in the amount of $50,000. While this latter amount does not reflect the damages plaintiffs would sustain during the normal course of appeal, an expedited appeal may be possible in this case thereby limiting the expenses plaintiffs will have to incur.

## II. *Sanctions Will Be Imposed*

Plaintiffs seek sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 against Genins as they allege that "Genins repeatedly has filed pleadings and other papers with this Court which are deliberately misleading, have no basis in fact or law, and have unreasonably and vexatiously multiplied these proceedings." (Plaintiffs' Brief at 1).

As an initial matter, Genins submits that plaintiffs' motion for sanctions should not be considered by this Court as Genins' appeal has been filed with the Second Circuit "which now has jurisdiction to adjudicate the merits of this case." (Genins' Decl. at ¶ 3). However, a district court maintains jurisdiction to entertain a motion for Rule 11 sanctions even after the filing of a notice of appeal. *See Val–Land Farms, Inc. v. Third National Bank in Knoxville,* 937 F.2d 1110, 1117 (6th Cir.1991); *cf. Chemiakin v. Yefimov,* 932 F.2d 124, 127 (2d Cir.1991).

### A. *Section 1927*

Section 1927, entitled "Counsel's liability for excessive costs," empowers a federal court to require an attorney "to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred" when that attorney has "unreasonably and vexa-

tiously" multiplied the proceedings in an action. 28 U.S.C. § 1927. The purpose of this statute is to "deter unnecessary delays in litigation," and "an award made under § 1927 must be supported by a finding of bad faith." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986). Section 1927 applies to any attorney or other person admitted to conduct cases in a federal court. Unlike Federal Rule of Civil Procedure 11, § 1927 does not apply to *pro se* litigants. *See Sassower v. Field,* 973 F.2d 75, 80.

Plaintiffs maintain that although Genins is proceeding *pro se* in this action, he should not be exempt from § 1927 sanctions because he is a disbarred attorney. A disbarred attorney, however, is by definition not "admitted to conduct cases" in federal court. Genins appears in this action as a *pro se* litigant, and accordingly, he is not subject to sanctions under § 1927.

### B. *Rule 11*

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, [and]; ...

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

The substantive requirement imposed on an attorney or party by Rule 11 is that "[p]lead-

ings, motions, and other papers be justifiable at the time they are signed." *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991). It follows, then, that a court must neither "allow hindsight to skew judgment" nor "countenance belated rationalizations concocted to conceal chicanery." *Id.*

▪ Moreover, Rule 11 sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands...." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254. Sanctions must, however, be imposed carefully, lest they chill the creativity essential to the evolution of the law. *See Murphy v. Cuomo,* 913 F.Supp. 671, 682 (N.D.N.Y.1996); *see also Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir. 1994). "A showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule." *Eastway,* 762 F.2d at 253–54.

If the court determines that Rule 11 has been violated, sanctions may be imposed pursuant to Rule 11(c), which provides for:

> (c) Sanctions. If, after a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

In determining whether Rule 11 sanctions are appropriate, courts are directed to consider such factors as: "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether the responsible person is trained in law; [and] what effect it had on the litigation process in time or expense." Fed.R.Civ.P 11 Advisory Committee's note. Upon consideration of these factors and upon review of

Genins' record in this action, sanctions against Genins are warranted.

As noted above, according to Genins' own papers, his motivation for objecting to the settlement and moving to intervene was for the purpose of seeking compensation for his own unrelated claims. *See In re Nasdaq,* 187 F.R.D. at 490–91. In pursuit of his own aims, Genins has filed a number of redundant and meritless papers. In his only timely objection, Genins asserted that the settlement releases encompass "virtually all claims any class member may have against defendants &/or any entity associated with defendants, including their advisors." (Addendum to Objection at n. 9). In fact, the releases are strictly limited by subject matter and release only those claims directly related to this action. As this Court observed, "the releases expressly carve out exceptions, so that there can be no mistake about the limited character of the releases. The exceptions include, for example, garden variety securities fraud cases, and 'churning' cases. Claims of those kinds are not released even if they involve a class security." *In re Nasdaq,* 187 F.R.D. at 482.

Following this Court's opinion, *In re Nasdaq,* 187 F.R.D. at 480–83 and 490–92, denying Genins' motion to intervene and dismissing his objections, Genins filed a Rule 59(e) motion to set aside the final judgment. He then filed another motion seeking reconsideration of this Court's decision denying his motion to intervene and a motion for "an immediate Court Order allowing [his] inspection and copying of all the secret filings by the parties."

By Opinion and Order dated February 10, 1999, the Court found that Genins "failed to offer any support for his motion" for reconsideration. *In re Nasdaq,* 184 F.R.D. at 510. Similarly, with respect to Genins' 59(e) motion, the Court found that "Genins has not advanced any reason why the Opinion and Judgments should be disturbed". *Id.* at 511.[7] The Court also found that Genins had provided "no reason why he should be allowed to inspect any document filed under seal in this case." *Id.*

---

**7.** The Court also held that Genins, having been denied intervention, had no standing to bring a Rule 59(e) motion. *See In re Nasdaq,* 184 F.R.D. 506, 510–11.

■ The continued assertion of a factual or legal argument long after that argument has proven to be completely baseless is sanctionable conduct, *see O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir.1996) (*quoting* Advisory Committee's comments accompanying 1993 amendment of Rule 11); *Eastway,* 762 F.2d at 252, as is "the waste of judicial resources and resulting inefficiencies and delays that affect all actual and potential litigants in the federal courts." *Williams v. Revlon Co.,* 156 F.R.D. 39, 43 (S.D.N.Y.1994). Moreover, where, as here, an objector to a class action settlement pursues an unmeritorious appeal in order to pursue a "strategy of tactical disruption and delay," he "should be aware of Rule 11." *In re Ivan F. Boesky Securities Litigation,* 948 F.2d 1358, 1368 (2d Cir.1991).

■ In the present action, Genins has abused the litigation process by pursuing his personal agenda even though his claims have "no chance of success under the existing precedents," and "no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway,* 762 F.2d at 254. The cumulative effect of Genins' repeated filings is to obstruct and delay the administration of the $1.027 billion settlement to the detriment of the entire class.

Both the Supreme Court and the Second Circuit have emphasized that the purpose of sanctions under Rule 11, "is not reimbursement but 'sanction.' and that, accordingly Rule 11 sanctions shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others." *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 126, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *see also Eastway,* 762 F.2d at 254.

Consistent with these holdings, Rule 11 was amended in 1993 to permit the Court to order "payment to the movant of some or all of the reasonable attorney's fees" only "if imposed on motion and warranted for effective deterrence." Fed.R.Civ.P. 11(c)(2). The typical sanction after this amendment has been the payment of the other side's reasonable attorney's fees which were incurred as a result of the improper filing. *See Wood v. Brosse U.S.A., Inc.,* 149 F.R.D. 44, 52 (S.D.N.Y.1993). Under the amended Rule 11, courts in this district have imposed monetary sanctions for frivolous contentions of law. *See e.g., Segarra v. Messina,* 158 F.R.D. 230, 233–34 (S.D.N.Y.1994).

For the reasons set forth, Genins has violated Rule 11. A hearing will be held within twenty (20) days upon notice by plaintiffs to determine the proper amount of sanctions Genins must pay. Genins is permitted to submit information regarding his financial resources and any other information he deems to be *particularly* relevant to the issue of sanctions. *See* Fed.R.Civ.P. 11(c); *Eastway,* 762 F.2d at 254; *City of Yonkers v. Otis Elevator Co.,* 106 F.R.D. 524, 525 (S.D.N.Y.1985); *Abner Realty, Inc. v. Administrator of General Services Administration,* 1998 WL 410958 (S.D.N.Y. July 22, 1998).

In light of the $101,500 bond Genins is ordered to post, additional monetary sanctions seem gratuitous at this juncture. Nonmonetary sanctions are more appropriate and have greater potential efficacy here.

### C. *Genins is Enjoined*

In addition, Genins is hereby enjoined from filing any further motions in this Court that relate in any way to the *NASDAQ* matter without prior leave from the Court.

■ A district court has the authority to enjoin a plaintiff who engages in a pattern of vexatious litigation from continuing to do so. *See Safir v. United States Lines, Inc.,* 792 F.2d 19, 23 (2d Cir.1986). "The Supreme Court and numerous courts of appeals have recognized that courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *In re Martin–Trigona,* 9 F.3d 226, 228 (2d Cir. 1993).

The Second Circuit has stated that a

district court, in determining whether or not to restrict a litigant's future access to the courts, should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative law-

suits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir,* 792 F.2d at 24.

Given Genins' conduct thus far it seems likely that, absent some restriction, he will continue to "abuse the judicial process." Genins has filed a number of motions all of which have been found to be meritless. In light of this Court's discussion and disposition of all of Genins' motions, it can hardly be said that Genins could have had an objectively reasonable expectation of prevailing in this case.

Genins' submissions reinforce what is apparent from the record—Genins plans to continue to file papers in this action until he achieves his desired outcome. Despite the considerable attention devoted to Genins by this Court, Genins maintains that he has not been afforded an opportunity to be heard. He submits that the opinions and orders of this Court "appear tailored to defeat my positions and 'parrot' " the reasoning of the plaintiffs, and requests a jury trial "herein of all issues so triable by law." (Genins Decl. ¶¶ 8 & 10).

■ In limiting a party's ability to litigate, a court should take care to ensure that the restrictions placed on the party "are, taken together, not so burdensome as to deny the litigant meaningful access to the courts." *Abdullah v. Gatto,* 773 F.2d 487, 488 (2d Cir.1985) (*quoting In re Green,* 669 F.2d 779, 786 (D.C.Cir.1981)). Courts have therefore developed restrictions that fall short of a total prohibition on commencing lawsuits, including "prohibiting the filing of any matters in a designated category, [and] requiring leave of court for future filings."

*In re Sassower,* 20 F.3d at 44 (citations omitted). *See, e.g., Polur v. Raffe,* 912 F.2d 52, 57 (2d Cir.1990) (enjoining plaintiff from filing without leave of court further suits in federal court arising out of dissolution and receivership of certain corporation); *Safir,* 792 F.2d at 25 (modifying district court's injunction to provide that plaintiff was prevented from commencing additional federal court actions relating in any way to defendants' pricing practices or merchant marine subsidies during certain period without first obtaining leave of district court); *In re Martin–Trigona,* 737 F.2d at 1262 (describing as "hardly unreasonable" district court's order that, before commencing suit in federal court, plaintiff first inform that court of certain pertinent facts, including the existence of the injunction order, and obtain leave of court to file the action).

■ It appears that the least restrictive, but effective, means of protecting plaintiffs and the Court from further vexatious litigation by Genins is to enjoin him from filing any further papers in this court that relate in any way to *In re NASDAQ* without first obtaining prior leave of court. Such an order will not deprive Genins of his right of access to the courts, but it will hopefully put an end to what has become a pattern of vexatious and nettlesome litigation.

### *Conclusion*

For the reasons stated above, plaintiffs' motions are granted.

Settle order on notice.

It is so ordered.