Hadassa Y. **BUXBAUM, et al., Plaintiffs,**

v.

**DEUTSCHE BANK AG and Rolf–Ernst Breuer, Defendants.**

No. 98 Civ. 8460(JGK).

United States District Court,
S.D. New York.

May 3, 2003.

Lester L. Levy, Wolf Popper, LLP, New York City, Stanley D. Bernstein, Liebhard & Lifshitz, LLP, New York City, for Plaintiffs.

Jeffrey Barist, Milbank, Tweed, Hadley & McCloy, LLP, New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge.

This is a motion to intervene, pursuant to Fed. R. Civ. P. 24(a), brought by MDNH Traders LLC ("MDNH") and a motion pursuant to Fed.R.Civ.P. 60(b), to vacate the Order and Final Judgment issued on September 5, 2002, approving the class action settlement in this action. Deutsche Bank AG and Rolf–Ernst Breuer (the "defendants") and Hadassa Y. Buxbaum, Nancy Neale Enterprises, Inc., Bright Trading Incorporated by Tony Gentile, Melvin Hall, and Russel P. Young (collectively "the Lead Plaintiffs") have opposed the motions.

## I.

On April 12, 1999, the Lead Plaintiffs filed a First Amended Complaint, alleging violations of federal securities laws, including § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, by Deutsche Bank, AG and Rolf–Ernst Breuer (collectively the "defendants"), arising out of allegedly false statements made by Breuer denying the existence of takeover talks between Deutsche Bank AG ("Deutsche Bank") and Bankers Trust Corporation ("Bankers Trust"). The First Amended Complaint alleged that these false statements were made during an interview with a German magazine published on October 25, 1998 and alleged that these statements had the effect of depressing the price of Bankers Trust stock.[1]

An order was issued on November 3, 2000 granting the Lead Plaintiffs' unopposed motion for class certification of "all persons [subject to certain exceptions not here rele-vant] who sold the common stock or call options, or purchased put options of Bankers Trust Corporation between October 26, 1998 through and including November 20, 1998" (the "Class"). (Order dated Nov. 3, 2003 ("Class Certification Order") at 2.) The Lead Plaintiffs were designated as the representatives of the class. (See id.)

An order was issued on February 9, 2001, directing the defendants to direct the Bankers Trust's transfer agent to provide to the Lead Plaintiffs the names and addresses of all persons who sold Bankers Trust common stock during the class period. (Order dated Feb. 9, 2001 ("Class Notice Order") at ¶ 1.) The Class Notice Order directed the Lead Plaintiffs to mail a "Notice of Pendency" of the class action to those class members identified by Bankers Trust and individuals who requested copies of the Notice of Pendency, and requested that securities brokers, financial institutions, and relevant nominee companies who received the Notice to send it to the relevant class members. (Class Notice Order ¶¶ 1–4.) The Class Notice Order also provided that the Lead Plaintiffs were to cause the publication of a summary notice of pendency of class action on one occasion in the national edition of the *Wall Street Journal* and *PR* or *Business Wire* within 10 days of the mailing of the Notice of Pendency. (Class Notice Order ¶ 3.) The order provided that parties wishing to opt out of the class must file a notice of exclusion postmarked 45 days after the mailing date of the Notice of Pendency.

The Notice of Pendency was mailed to these individuals and entities beginning on April 4, 2001. (Aff. of Jack R. DeGiovanni ("DeGiovanni I Aff.") dated Aug. 19, 2002 ¶ 2.) In addition, a Summary Notice of the Pendency of Class Action was also published.

After the class was certified, the parties engaged in and completed extensive pre-trial discovery. Shortly before trial, with the assistance of the mediation by former Judge Nicholas Politan, the Lead Plaintiffs and the

---

1. Other background facts relating to the case and the nature of the allegations made by the class members are fully set forth in prior opinions and orders of this Court. *See Buxbaum v. Deutsche Bank AG,* 196 F.Supp.2d 367 (S.D.N.Y.2002); *Buxbaum v. Deutsche Bank AG,* No. 98 Civ. 8460, 2000 WL 33912712 (S.D.N.Y. Mar.7, 2000).

defendants were able to arrive at a tentative settlement. On June 19, 2002 the Preliminary Approval Order tentatively approving the settlement was issued. The settlement provided for a settlement fund of $58 million. Pursuant to this order, the Court approved the form and content of the "Notice of Proposed Settlement of Class Action, Hearing on Proposed Settlement and Attorneys' Fee Petition and Right to Share in Settlement Fund" (the "Notice"). (Order dated June 19, 2002 ("Preliminary Approval Order") at ¶ 3.) In addition, the Court approved the form and content of the "Proof of Claim and Release Form" (the "Proof of Claim") as well as the Summary Notice to be published. (*Id.*) This Preliminary Approval Order provided that a fairness hearing on the proposed settlement would be held on September 5, 2002 and that the deadline for the filing any objections to the settlement was August 22, 2002. (Preliminary Approval Order ¶¶ 2, 10.)

The Preliminary Approval Order contained provisions for providing the Notice and Proof of Claim to class members. Pursuant to those provisions, the Lead Plaintiffs' claim administrator mailed 14,600 copies of the Notice and Proof of Claim to potential class members and brokers, based on lists provided by the defendants and the Bankers Trust transfer agent. (DiGiovanni I Aff. ¶ 5.) The Summary Notice was published in *The Wall Street Journal* and *USA Today* on July 9, 2002. (Decl. of Stanley Bernstein & Lester L. Levy ("Joint Decl.") dated August 29, 2002 ¶ 86.) Despite the sophisticated nature of some of the institutional members of the class, no objections to the settlement were filed. A fairness hearing was conducted by the Court on September 5, 2002. (Joint Decl. ¶ 87.) The Order and Final Judgment approving the settlement was issued by the Court on September 5, 2002 and entered on September 11, 2002. (Order dated September 5, 2002 ("Judgment Order" or "Order and Final Judgment").)

In the Order and Final Judgment this Court found that the terms of the settlement and the Plan of Allocation for damages to be "fair, just, reasonable and adequate" for the class. (Judgment Order ¶¶ 5,7.) In addition, the Notice of settlement given to class members was found to be "the best notice practicable under the circumstances" and it also "fully satisfied the requirements of Fed. R.Civ.P. 23 ... and the requirements of due process." (Judgment Order ¶¶ 11.)

As part of the Judgment Order, the Lead Plaintiffs and each Class member, with the exception of three individuals who had opted out of the class, were "deemed to have ... fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties, whether or not such Class member executes and delivers the Proof of Claim and Release." (Judgment Order ¶ 8.) All class members, with the exception of the three individual opt outs, were "forever barred and enjoined from prosecuting any of the Released Claims against any of the Released Parties." (Judgment Order ¶ 9.)

MDNH, during the class period, bought and sold the common stock of Bankers Trust and was a member of the Class certified by the Judgment Order. (Decl. of Van E. Hart (Hart Decl.) dated Dec. 3, 2002 at ¶¶ 3-4.) On December 4, 2002, nearly three months after the Order and Final Judgment was entered in this case, MDNH filed its motion to intervene, and now seeks to vacate the judgment. MDNH argues that although it filed its motion to intervene after judgment was entered, its motion is timely because it failed to receive proper and timely notice of the class settlement, and that it should be permitted to intervene because the lead plaintiffs failed to protect adequately the interests of MDNH, which allegedly related to different Bankers Trust securities than those held by the Lead Plaintiffs. In particular, MDNH argues that the Plan of Allocation in the settlement only gives MDNH 50% of the actual value of the loss sustained during the course of selling Bankers Trust securities on November 19, 1998 and provides no compensation for the loss in value of the securities sold on November 20, 1998.

With respect to their Rule 60(b) motion, MDNH argues that the judgment should be vacated because the class settlement failed to comport with due process requirements and because in failing to provide actual notice to

MDNH the Lead Plaintiffs perpetrated a fraud upon the Court.

## II.

■ In order to establish that it has a right to intervene in this action pursuant to Fed.R.Civ.P. 24(a), MDNH must (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action. *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197–98 (2d Cir.2000) (citation omitted); *accord New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir.1992). The failure to meet any one of these requirements is sufficient grounds to deny the motion to intervene. *In re Holocaust Victim Assets Litig.*, 225 F.3d at 197–98; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir.2001).

## A.

■ The Lead Plaintiffs and the defendants first argue that MDNH's motion is untimely because it was filed after the entry of Final Judgment. For a Rule 24(a) motion, timeliness is determined by looking at the totality of the circumstances through the consideration of four specific factors:

> (1) how long the applicant had notice of its interest in the action before making the motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from the denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention.

*In re Holocaust Victim Assets Litig.*, 225 F.3d at 198; *accord Farmland Dairies v. Comm'r of New York State Dep't of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir.1988). The Court of Appeals has noted that post-judgment intervention "is generally disfavored because it usually creates delay and prejudice to existing parties." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir.1986) (citation omitted).

■ In this case, MDNH alleges that it only became aware of the settlement and its terms when it received the Notice of settle-ment on October 15, 2002, after the Order and Final Judgment was entered. (*See* Hart Decl. ¶ 11.) MDNH further contends that it only received a copy of the April 13, 2001 "Notice of Pendency of Class Action" on November 6, 2002, and that is when it became aware that it could no longer opt out of the class. (*See* Hart Decl. ¶ 14.) MDNH's basic argument is that because it acted promptly after it actually received the notices and after it became aware of its inability to opt out of the settlement class and after it allegedly appreciated the alleged unfairness of the settlement terms, the motion to intervene was filed in a timely manner.

MDNH's timeliness arguments lack merit. As an initial matter, although MDNH tries to create the impression that it was in the dark about the progress of this lawsuit and the effect of any settlement on its interests, MDNH's own statements highlight the fact any charge of ignorance lacks credibility. MDNH is a highly sophisticated and active trader in various Bankers Trust securities. Van Hart, a member of MDNH, attests that during the class period he was a trader and market maker in Bankers Trust securities on the Pacific Stock Exchange. (Hart Decl. ¶ 2.) Throughout the class period, MDNH purchased Bankers Trust securities on a daily basis. (Hart Decl. ¶ 3.) MDNH admits it became aware of the fact that a class action had been filed in approximately June 1999. (Hart Decl. ¶ 10.) In fact, a member of MDNH held several discussions with counsel for the Lead Plaintiffs regarding the merits of the case. (*Id.*) At that point, MDNH did not file an application to serve as lead counsel, and did not seek to intervene, and instead permitted the Lead Plaintiffs and lead counsel to litigate the various claims in the case for a period of over three years. MDNH also did not attempt to opt out of the class, although it now contends that it only became aware of the deadline for opting out in November, 2002. (Hart Decl. ¶ 14.)

Moreover, the Notice of settlement provided to class members was the "best notice practicable under the circumstances" and apprized all class members, including MDNH, of the terms of the settlement and the relevant objections period. (Judgment Order

¶ 11.) The Notice was mailed to all class members on April 12, 2001 and also published in the national edition of the *Wall Street Journal* and *USA Today.* To the extent that MDNH argues that it did not receive the Notice of Pendency of the class action, the Notice of Pendency was distributed in virtually the same manner as the Notice regarding the settlement, and consequently, was also the best notice practicable under the circumstances. In any event, MDNH's argument that it failed to receive the Notice of Pendency or the Notice of settlement is unavailing, because a party need not have actually received notice of time-limits for a Rule 24(a) motion to intervene to be untimely. *See Republic of the Philippines v. Christie's,* No. 98 Civ. 3871, 2000 WL 1056300, at *3 (S.D.N.Y. Aug.1, 2000).

MDNH was aware of the pendency of this case and the possibility that its interests could diverge from those of the Lead Plaintiffs but chose not to attempt to intervene or to opt out. Given these circumstances, there is no reasonable explanation for MDNH's failure to intervene until nearly three months after the entry of judgment that would permit a post-judgment intervention motion to be granted. *See D'Amato,* 236 F.3d at 84 (upholding district court's determination that intervention motion was untimely where intervenor offered no explanation for delay in filing motion, had reason to know about the class action settlement and progress of the litigation, and filed motion to intervene three days prior to the fairness hearing); *Farmland Dairies,* 847 F.2d at 1044–45; *In re Nasdaq Market–Makers Antitrust Litig.,* 184 F.R.D. 506, 513–514 (S.D.N.Y.1999) (denying motion to intervene for lack of timeliness where intervenors waited several months after entry of judgment to file motion, although they were "aware that their interests might diverge from those of the existing class representatives well before they filed their motions to intervene"); *Katz v. Berisford Int'l PLC,* No. 96 Civ. 8695, 2000 WL 1760965, at *4 (S.D.N.Y. Nov.30, 2000).

Furthermore, there would be substantial prejudice in allowing MDNH to enter the case at the post-judgment stage. The class members have waited nearly four years from the filing of the Amended Complaint to recover damages. The effect of MDNH's entry into the case would be to disrupt the current Plan of Allocation of the very substantial settlement fund, because MDNH's position is that certain transactions of Bankers Trust stock and options taking place on November 19 and November 20, 1998 should be valued differently by the Plan of Allocation. This would result in significant delays in the disbursement of proceeds to the class members, because the Plan of Allocation would have to be re-evaluated and the amounts to be disbursed would have to be re-calculated. The pending motions are an unfortunate untimely attempt to derail a substantial settlement with significant value to members of the class. The potential prejudice to the class members and the defendants of delaying and undermining the fair settlement reached by permitting late post-judgment intervention is sufficient to deny the motion to intervene. *See Farmland Dairies,* 847 F.2d at 1044–45; *D'Amato,* 236 F.3d at 84; *In re Nasdaq Market–Makers,* 184 F.R.D. at 514–15.

Moreover, the purpose of this motion to intervene is to vacate the judgment entered which finally settles this case and provides a substantial benefit to the class and provides finality to the class and to the defendants. MDNH has submitted a proposed complaint which mirrors the Amended Complaint except that MDNH now seeks to represent the class. At argument, counsel for MDNH, which has not participated in the lawsuit, was understandably unable to predict whether, if permitted to pursue their lawsuit at this late date, the result at the end of the day would be any better for any members of the class.

In addition, the prejudice to be suffered by MDNH from an inability to intervene is minimal, if not non-existent. MDNH stands to recover significant damages from the class settlement, even if it is not permitted to intervene. Counsel for the Lead Plaintiffs has informed MDNH that although there was no recovery for trades of Bankers Trust options and stock traded on November 20, 1998, and only limited recovery for trades on November 19, 1998, MDNH was still entitled to recover, based on information provided by

MDNH, over $500,000 in damages resulting from other trades. (Decl. of Abraham I. Katsman ("Katsman Decl.") dated Jan. 17, 2003 ¶¶ 8, 11; Aff. of Jack R. DiGiovanni ("DiGiovanni II Aff.") sworn to Jan. 16, 2003 ¶ 16.) The parties have apparently continued to discuss the various trading records of MDNH, and the parties advised the Court at oral argument on the pending motions that the Claims Administrator for the settlement fund has advised that MDNH's recovery from the settlement fund will exceed $720,000.

MDNH communicated with Lead Plaintiffs' counsel during the litigation, permitted the Lead Plaintiffs to litigate the action and never filed an application to serve as lead plaintiff. MDNH cannot now claim that it is prejudiced by the terms of a fair and reasonable settlement, when it was aware of the litigation and permitted the Lead Plaintiffs to negotiate the terms of that settlement and to litigate the action.

Finally, MDNH has not shown that there are special circumstances warranting post-judgment intervention. The fact that MDNH was not asked to serve as lead plaintiff, as MDNH has argued, is of no consequence, because MDNH could have filed its own motion to serve as lead plaintiff, and instead chose not to. To the extent MDNH argues it was unaware of its rights at the outset of the litigation, it could have sought to intervene during the course of the litigation and could have sought leave to make late applications at that time, but again chose not to do so. Rather, it waited until a fully negotiated, substantial settlement was about to be paid out, and then brought these motions. That effort is plainly too late.

Thus, the totality of the circumstances, as examined through the consideration of the four factors outlined by the Court of Appeals, indicates that MDNH's motion to intervene is untimely.

## B.

■ While MDNH has an interest in this action, because it is a member of the class, its interests are being compensated in the settlement on the same basis as all other Bankers Trust security holders. MDNH's basic contention is that it is not receiving adequate compensation for certain trades that occurred on November 19 and 20, 1998.[2]

The Plan of Allocation approved by the Order and Final Judgment issued on September 5, 2002 provides for the reimbursement to class members on a pro rata basis for damages resulting from the alleged artificial deflation of the Bankers Trust stock during the class period. The Lead Plaintiffs were responsible for developing the Plan of Allocation. Their damages expert, Professor Gregg A. Jarrell, calculated that the amount of deflation in the price of shares of Bankers Trust resulting from the allegedly false statements denying the merger between Deutsche Bank and Bankers Trust (including an amount to compensate for the effect of an allegedly necessary corrective statement) was the following: $8.00 per share for those shares traded from October 26, 1998 through November 18, 1998; $3.91 per share for those shares traded on November 19, 1998; and $0.00 for shares traded on November 20, 1998. (Report of Gregg A. Jarrell ("Jarrell Report") dated Feb. 1, 2001 ¶ 58. attached as exh. D to Katsman Decl.) The deflationary effect declined to $3.91 per share on November 19 and to zero on November 20, because by those dates there was new information in the marketplace indicating that there was to be an impending merger announcement and that information drove the price of Bankers Trust back to its predeflationary levels. (Jarrell Report ¶ 56 & n. 25.)

MDNH argues in broad fashion, without any credible basis, that it is entitled to damages for transactions that took place on November 20, 1998, and for a larger share of

---

2. MDNH had argued that certain issues of puts or calls that it held were not included in the initial list of such securities for which there would be compensation. The Claims Administrator made clear to MDNH, and counsel for the Lead Plaintiffs reiterated at argument, that no issue of puts or calls had been deliberately ex-

cluded and if MDNH had traded in puts or calls, and the trade otherwise qualified for the settlement fund, such a trade would be included in the settlement on the same basis as other trades in Bankers Trust securities in the class period. (*See* Katsman Decl. ¶¶ 2–4; 11.)

damages for transactions that took place on November 19, 1998, because the actual merger between Deutsche Bank and Bankers Trust was announced on November 23, 1998. MDNH, however, has misunderstood the theory of the Amended Complaint and the claims for damages.[3] The damages alleged in the First Amended Complaint arise from the false denial of preliminary takeover talks, not the false denial of a takeover. Consequently, the deflationary effects of the false denials were negated by new rumors of renewed takeover talks on November 19 and 20, 1998, as evidenced by the increase in the price of Bankers Trust stock that occurred on those days. (*See* Jarrell Report ¶¶ 37–43.) Thus, it is of no moment as to when the actual merger between the two companies took place or when the merger was actually announced.

Because the Plan of Allocation adequately accounts for the deflationary effects on the Bankers Trust stock that took place on November 19 and 20, 1998, MDNH has no basis to argue that its interests are not being adequately compensated in the settlement.

### C.

■ MDNH also has failed to show that its interests are not adequately protected by the Lead Plaintiffs. As explained above, because MDNH's claims regarding additional damages incurred on November 19 and 20, 1998 lack merit, MDNH stands in the same position as all the members of the class that had sold Bankers Trust stock or call options or purchased Bankers Trust put options during the class period and who suffered financial loss from the allegedly false denial of preliminary merger talks. MDNH's interests were adequately protected by the terms of the settlement, through which it will receive over $700,000. In addition, MDNH was aware that the Lead Plaintiffs were liti-

gating this action and permitted them to do so for nearly four years without any objection. In light of this acquiescence and the fact that the settlement itself is fair, reasonable, and adequate in all respects, MDNH has not shown that its interests are not adequately protected by the Lead Plaintiffs.

For the reasons explained, MDNH's motion to intervene pursuant to Rule 24(a) is denied.

### III.

■ Even if MDNH were correct that it failed to receive the Notice of settlement, and were it permitted to intervene in this action, MDNH would only be entitled to file objections to the settlement, and it would not be permitted to opt out of the class. Construing MDNH's papers as possible objections to the settlement, the objections would be denied.

The period of time to opt out of the class lapsed over three years ago, forty-five days after the Notice of Pendency was mailed, and any application to opt out of the class would be untimely and would not be granted, given the risks of undermining the settlement and prejudicing the interest of all of the parties. The "lack of timely notice of the settlement may, in certain circumstances, justify late opposition to the proposed terms of the settlement." *Langford v. Devitt,* 127 F.R.D. 41, 45 (S.D.N.Y.1989). Yet, such an opportunity to file late objections "does not provide an additional opportunity to opt out of a class." *Id.*

MDNH has provided no persuasive objections to this Court's finding that the settlement was fair, just, reasonable, and adequate. MDNH's efforts to obtain additional damages for its trades on November 19 and 20, 1998 are unpersuasive for the reasons explained above. In any event, any objection to the settlement would be meritless. It was determined at the fairness hearing that the

---

3. The expert report submitted by MDNH fails to provide any convincing response to the Jarrell Report and fails to respond adequately to the arguments relating to the reduction or elimination of damages for trades on November 19 and 20, 1998. Moreover, the expert report submitted by MDNH was submitted in connection with its reply papers and may not be considered for the purposes of this motion because the Lead Plain-

tiffs and the defendants had no opportunity to respond to such arguments, and in any event, full consideration and development of these issues require that the arguments be raised in the original moving papers. *See Friends of Gateway v. Slater,* 257 F.3d 74, 78 n. 3 (2d Cir.2001); *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2d Cir.1999) (per curiam).

settlement was a fair and reasonable settlement, and that the interests of all class members were represented fairly. (*See* Joint Decl. ¶¶ 78,80,82,83 (noting that had the case gone to trial, class members' maximum damages may not have exceeded $60,500,000, while settlement paid by defendants amounted to $58,000,000).)

The settlement in this case was fair based on the substantial amount of the recovery, the percentage of possible recovery and the risks as to both liability and damages if the case had gone to trial. The settlement was arrived at through arm's length negotiations with the assistance of a distinguished former judge. The settlement was arrived at only shortly before trial and after extensive discovery. All of the factors traditionally used to assess the fairness of a settlement point to the fairness of this settlement. Against this formidable array, MDNH, having left the rigors of the litigation process to others, offers only Monday morning quarterbacking. Its objections to the fairness of the settlement are speculative and unfounded.

### IV.

Even if MDNH's motion to intervene were granted, MDNH has not established that it is entitled to relief under Fed.R.Civ.P. 60(b).

Rule 60(b) allows the Court "relieve a party ... from a final judgment, order, or proceeding" if the party demonstrates its case falls under one of five different enumerated reasons or for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). The party seeking relief under Rule 60(b)(6) must also demonstrate a showing of "extraordinary circumstances." *See Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir.1994); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir.1994); *Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990), *aff'd*, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). Relief pursuant to Rule 60(b) is "particularly inappropriate where the relevant challenge is brought to a class action settlement." *Presidential Life Ins. Co. v. Milken*, 946 F.Supp. 267, 278 (S.D.N.Y.1996) (collecting cases).

MDNH argues that the Final Judgment and Order should be set aside because MDNH failed to receive Notice of Pendency relating to the class certification and the Notice of settlement, a failing that MDNH asserts indicates that the class action did not comport with due process, and because in failing to provide the actual Notice of Pendency of class action and the Notice of the settlement to MDNH, the Lead Plaintiffs and the defendants perpetrated a fraud on the Court. These arguments are without merit.

### A.

With respect to its first challenge, MDNH argues that its failure to receive the Notice of Pendency relating to class certification or the Notice of settlement violates due process, was in violation of the requirements imposed by Fed.R.Civ.P. 23(c)(2), and requires that the Order and Final Judgment be vacated. MDNH has not raised any arguments with respect to the content or substance of either notice, and bases its argument entirely on the failure to receive either of the notices in a timely fashion.

Fed.R.Civ.P. 23(c)(2) provides that "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Court is given broad power over which procedures to use for providing notice so long as those procedures are consistent with the standards of reasonableness imposed by the due process clause. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.1996). It is "widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc.* 164 F.R.D. at 368 (collecting cases); *see also Presidential Life*, 946 F.Supp. at 277–78 (collecting cases).

In this case, although MDNH protests that it did not receive either the Notice of Pendency of the class action or the Notice

of settlement, the procedures employed with respect to both notices were consistent with due process, and the best notice practicable under the circumstances, even if MDNH did not actually receive notices in a timely fashion. The Court found that the Notice of settlement was the best notice practicable under the circumstances and that the Notice comported with the requirements of due process. (Judgment Order ¶ 11.) This Notice was mailed to thousands of individuals who could be identified and a Summary Notice was published in two major publications. The Notice of Pendency of class action also was the best notice practicable under the circumstances; it was mailed to those Bankers Trust stockholders identified by Bankers Trust's transfer agent, financial institutions and nominee entities. Brokers, financial institutions, and nominees who received the notice were requested to send it to relevant class members. A Summary Notice informing readers that a class was certified was also published in two major business publications. The notice procedures used for both the Notice of settlement and the Notice of Pendency were similar to the notice procedures used in other class actions and that were found to be consistent with the requirements of due process. *See, e.g., In re Prudential Sec.,* 164 F.R.D. at 368 (finding mailing of notice to last known addresses and publication in two national newspapers sufficient to satisfy due process and collecting cases where similar notice was sufficient). In addition, as explained earlier, MDNH's assertion that it did not have knowledge of the Notice of Pendency or the Notice of settlement lacks credibility, given the fact that MDNH communicated with counsel for the Lead Plaintiffs during the progress of this action and could have sought any information it wished about the pendency of the action. Given these circumstances, MDNH has failed to establish that the notice provided in this case violated due process and its motion to vacate the Final Judgement on this basis is denied.

## B.

In passing, MDNH argues that the failure by the Lead Plaintiffs to mail notices to the known addresses of the class members constituted fraud on the Court, and justifies vacating the Order and Final Judgment. Rule 60(b)(3) provides that a Court may set aside a final judgment, order, or proceeding on the grounds of fraud, misrepresentation or other misconduct of an adverse party, so long as the motion is made within a reasonable time, and no more than one year after the judgment was entered. Fed.R.Civ.P. 60(b). In addition, the saving clause of Rule 60(b) provides that Rule 60 does not limit the power of a court "to set aside a judgment for fraud upon the Court." *See id.*

A party seeking relief under Rule 60(b)(3) on the grounds of fraud or misrepresentation must establish by clear and convincing evidence that the opposing or adverse party engaged in fraud or similar misconduct. *See Fleming v. New York University,* 865 F.2d 478, 484 (2d Cir.1989). The type of fraud necessary to sustain a claim under the saving clause of Rule 60(b) is narrower in scope than the type of fraud provided for under Rule 60(b)(3) and the moving party must show that the fraud was of a kind that "seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 558 (2d Cir.1988). MDNH has not satisfied the requirements for relief under either provision.

MDNH's allegations are entirely baseless. There is no basis to infer that the known addresses of class members were not used when mailing either the Notice of Pendency of the class action or the Notice of settlement. The addresses used were obtained from representatives of Bankers Trust and mailed to the last known addresses of the individuals, financial institutions, and nominee entities who were known to have sold securities during the class period. No class members besides MDNH have come forward to indicate that they did not receive notices at an appropriate address, and even if some class members did not receive the notices, the notice procedures used would still be considered reasonable, and thus certainly not a basis to infer the existence of fraud, because the last known addresses of the class members were used by the Lead Plaintiffs. *See In re Prudential Secs.,* 164 F.R.D. at 369–70 (collecting cases). In addition, MDNH has provided nothing beyond its bare

allegation to indicate that the addresses used by the Lead Plaintiffs were not correct or were fraudulent. Even MDNH admits that it received the notices through its clearing broker, although it alleges that the clearing broker forwarded those notices in an untimely fashion. (*See* Hart Decl. ¶ 11.) Because there is no basis from which to infer fraud, MDNH's Rule 60(b) motion on this ground is denied.

## CONCLUSION

For the reasons explained above, MDNH's motion to intervene pursuant to Rule 24 is denied. In addition, MDNH's motion to vacate the Order and Final Judgement pursuant to Rule 60(b) is also denied. The Clerk is ordered to close this case.

**SO ORDERED.**